All right, we are now looking at the remainder of our docket, which is actually, let's see, one, two, three, four, five cases, but two have been submitted on the briefs. So we will hear the next three cases. We may or may not take a break, I guess. We'll see how it goes. I'll call the first case, which is case number 24, 1200, Gonzalez v. Brunnemer. Good morning, and may it please the Court. My name is Michael Axelrad. Together with Federal Counsel Sean Reinhart, I represent the appellant, Cody Brunnemer. We have an opportunity now to continue to explore the idea of reasonableness in the actions of police officers. This is a qualified immunity case, a civil matter rather than criminal, of course, and we're asking the Court simply to apply the rules it has developed, especially the two-part Harlow test with the two prongs. Now, the first prong, was there a violation of a constitutional right? In this case, we have a patrol officer who was alerted to a problematic situation with a property where there was a complaint by a neighbor. Well, that was a while before the stop occurred, right? I'm sorry. The officer was alerted to a problematic situation before, weeks before the stop occurred. At the time the stop occurred, he did not have any information about that particular individual in the case, right? That is correct. It was a situation where the neighbor said that there were a number of different people coming to and from the property. Some of them seemed to be entering the property, some of them loitering in the yard. She was concerned about drug transactions taking place there. A reasonable patrol officer, of course, is going to determine that he's going to keep an eye on the property. And if only six days later, he sees two individuals in the yard, he makes a determination that he's going to stop and simply ask questions. This is a prototypical Terry stop. It's not an intrusive, it's not an unreasonable intrusion on the individual's liberties there. It's simply to, oh, by the way, I forgot to mention I would like to reserve three minutes for rebuttal. But in terms of his actions, he saw the individuals in the yard, on private property, and this is distinguished from a number of cases where you see an individual in the public right-of-way. In this case, seeing them in the yard, immediately there's a concern that they are committing trespass. The officer merely decides- to a residential property, to a private property, walk up to the door and knock and remain there long enough to at least see if there's any response or if you're invited in. That doesn't really matter that it's a private property. You have an implied license to do that. And so did these individuals. Well, that's a question that is open at the time that he sees the individuals there, given the knowledge of the property. Right. He doesn't know, is my point. He doesn't know why they're there. So it's perfectly fine for him to go up and check to see and ask questions if he can. But then he seizes them and there's no, doesn't seem to be any question on appeal that there was a seizure. Let's clarify that. He tells them to stay there. And, you know, he proceeds from there. Once there's a seizure, he needs reasonable suspicion. And nothing's really changed at that point. That is correct. The reasonable suspicion is that he sees individuals on a property where he has a report from a neighbor and his own inspection of the property. Six days before, six days before, he has a report from a neighbor, not a report of criminal activity. He doesn't, he himself doesn't know whether it's vacant or not vacant. He has his own. How does that establish that these individuals didn't have an implied license to be on that porch? And he saw nothing. He saw nothing other than them on the porch. Under Terry and under Arvizu, the possibility that there is innocent conduct does not invalidate the decision to make that initial stop. And simply to question. Now, in this case, yes, there was a seizure after that. But that was only after a few questions were asked by the officer, followed by the appellee's attempt to flee. And after that time when he's seized, these are issues that the district court said are beyond the matters on appeal and that the only issue on appeal was the decision to make that initial stop. What happens after they fled is not on appeal, correct? That is correct. It's only that initial decision and whether the officer at the time that he sees individuals on this property with the knowledge that he has, whether that's a reasonable suspicion to initiate a Terry stop. Now, what are the facts in the record that support this officer having a reasonable suspicion of any criminal activity by this particular individual that was seized or the two people that were seized? None by the particular individual, but the report was of trespassers, a number of people coming to and from the property. Reasonable suspicion does not have to point to that individual in order to justify that initial stop to ask questions. And that's all this was, a stop to ask questions of the individuals as to why they were on the property. Given that this is a limited intrusion, we think that this is squarely within the confines of a Terry stop. And, in fact, it is supported by this Court's decision in Jones v. Manriquez where seeing someone on private property with reasonable suspicion justifies a stop. But wasn't there particularized information about that, the individual who was stopped in that case? There may have been, but that's not the determinative factor here. Why isn't it? It feels to me like it might be. Why isn't it the determinative factor that you have, this officer has some reason to, he got a call about this property six days before, but on the day of the patrol, what was the reasonable suspicion as to these particular individuals that would make this seizure lawful? I don't see that there is any case law or support for the proposition that reasonable suspicion has a shelf life of five days or less. If there are suspicions of actions on the property, why is it not reasonable just one week later to take that action as a patrol officer? Because it's not particularized. We have to have particularized suspicion. And in the Jones v. Manriquez case, which you just mentioned, there was more. In fact, that particular individual had been, was parked at 1.30 a.m. in a courier space in a private apartment parking lot, and they ran his tags, and he was not registered, did not live at that apartment. So there were several things beyond just being parked in an apartment. But at the time that the officer Those were, those were found to be particularized. And what we're trying to ask you here is, what particularized suspicion did this officer have? Information from the neighbor that there was trespassing going on at this property that By who knows who, seven days before. And the neighbor didn't say trespassing. The neighbor just called and said some suspicious activity. Didn't suggest any criminal activity. And the officer, when he went by, found no one there. So that's what you got. Okay, there was a suspicion of drug activity. That was mentioned. People entering and leaving the property. There were, these are, I'm going to just return to, I understand your skepticism about this point, but I'm going to return to Well, I'm still asking about the particular, particular suspicion as to these two, this individual who was there seven days later on the front porch, and he saw nothing other than him on the front porch briefly. But that does not invalidate And I'm sorry, I don't think it was the front porch. I think it was a side door, yes. This does not invalidate the action of a police officer investigating whether there is a crime going on to stop and ask a couple But the particularized requirement attends to the person, not the offense. I mean, it's, you have to have particularized suspicion that the person stopped is engaged in criminal activity. It can't just be criminal activity as a foot, right? I mean, that's well settled. No, it can be criminal activity in general of a particular type in these particular circumstances. Particularized suspicion does not require that you have information about one particular individual. If, if there is a suspicion that people are breaking into the property, engaging in illegal activity at the property, we are simply talking about an officer seeing an individual on the property and stopping and asking questions. That's all this is on the reasonable suspicion. Now, on the flip side of this, if you look at the qualified immunity on the second prong, do we have any information from the, from the APELE that there is a, any case that says that in these circumstances it's clearly established that this is an intrusion on the APELE's constitutional rights? What are the circumstances? Because the way that we, when we look for clearly established law, we have to have a really precise understanding of what the constitutional right is that is at issue for the first prong. So what is your understanding of what the constitutional violation here is such that there is no clearly established law to support prong two? The constitutional principle that we're talking about is whether this was an unreasonable seizure based upon seeing him on the property at the time, a property where the officer had suspicion, where he had been tracking that property for suspicious activity. Clearly that in these circumstances, the officer cannot. How about State v. Davis? District Court relied on State v. Davis. Let's talk about that one. I'm not sure which one that is. State v. Davis where the individual is walking outside in proximity, very close to a criminal, what was known to be a criminal establishment. It sold liquor, I think, or... Okay. Oh, this is the one where he's just walking down the street and the officer thought it looked suspicious? He was in proximity and he had, he was, he made and broke eye contact with the officers as he was walking away. He had his hands in his pockets and he had a known criminal history. And we said being in proximity to a criminal establishment along with these other, even with a criminal history, is simply not enough. What we have here is someone in proximity or on the steps of a private home with an apparent implied license to be there. And we don't, we don't know anything about this person. We know nothing. We don't know if he had a criminal history. We know nothing. Trespass is a criminal act under Colorado statute and under the Greeley Municipal Code. In these circumstances where he sees individuals not walking on the sidewalk, not close to an establishment, on the property, there is no case that says that in these circumstances the officer cannot stop and ask those questions. And I see my time... Well, he's welcome to stop and ask questions. That's not the, that's not the issue we have here. Stopping to ask questions isn't the problem. It's when he sees this individual did he have reasonable suspicion. So, your time is up, and I apologize. Okay. Yeah, I see him, yeah, in my rebuttal time. You don't, yeah, you don't have any... Okay, I will answer that question then. Thank you. Do you want to, you want to keep your time? I'm sorry. You did want to save? I shouldn't have interrupted there. No. I beg your pardon? Did you want to save your rebuttal time? I shouldn't have... Oh, yes, I did. I shouldn't have forced you to do that. I apologize. Okay. I did want to save it. And I should have asked my colleagues if there's any other questions, and I'm just... Well, honestly, if there are other questions at this time, I will take them, but otherwise it will save the time for rebuttal. No, all right. And I apologize for that. Thank you. Good morning. May it please the court. My name is John Graham, and I represent the plaintiff, Appellee Victor Emanuel Trevizo-Gonzalez. An officer's prior knowledge of suspected criminal activity in an area does not allow him to later detain anyone seen in that area. And that's exactly what happened in this case. For two decades, it has been clearly established that an individual's mere presence in an area associated with criminal activity, standing alone, does not rise to the level of reasonable suspicion. It has been applied in this circuit in a myriad of factual circumstances that are materially similar to this case and often involving far more facts than were available to Detective Brunimer at the time he made the decision to stop and detain Mr. Trevizo-Gonzalez. Can you help me with something? How are we supposed to be thinking about the private-public distinction that the appellant teases out of the cases here? Absolutely, Your Honor. I don't think it makes any difference under the particular facts of this case, and really for two reasons. One, the Fourth Amendment requirement for reasonable suspicion doesn't turn on where someone is located. It applies equally on private property as it does on public property. Law enforcement still need to have a particularized basis of suspected criminal activity. But more pointedly to the facts here, Mr. Trevizo-Gonzalez, at the time he was observed, was observed on this readily accessible doorstep to the property, one that is visible from the street, visible from the sidewalk, where the driveway is between the sidewalk and the doorway. It is not an unusual, it wouldn't be unusual for any member of the public to approach that door, knock on the door, see if someone's home, and absent an invitation to linger longer, leave. Is it uncontested that it's private property? Yes, it's a residence. It's a residence. And was it vacant? I mean, I guess what I'm trying to think through is the reasonableness of, you know, objectively, would you be knocking on the door of a vacant house? Sure. Here's what I can tell the court. I mean, based on the facts that are relevant to this case, I don't think it's known whether the property is vacant. Obviously, the exhibit that was submitted to the court, I think, contains the officer's entire body-worn camera footage, but nothing after the detention matters here. But I think it ultimately was determined at that point that the house was vacant, and officers at some point made a decision to call the property owner after it was made. So if the record supports the house was vacant, how should we be thinking about the implied license line of cases? Well, I just want to clarify that. I still don't think that it's known that the house is vacant for purposes of determining whether there was reasonable suspicion. Detective Broomer did not know that the house was vacant at the time he made the stop, but... He suspected it was vacant. Yes. And he had a reason to suspect it was vacant, right? Yes, I think he had a reason to suspect it was vacant, but the fact that it's just a mere suspicion, I think, quite easily distinguishes this case from even those lines of cases where the United States Supreme Court and the Tenth Circuit have said, presence in an area that's actually known to have criminal activity by itself is not sufficient. This case is even less. Yeah, yeah, that's a different line of doctrine, yeah. But to turn back to your point about the difference there, there isn't a difference. Even if the house is vacant, you have an implied license to approach a residence, to knock on the door and see if anyone is home. And there's nothing in the record to suggest Mr Trevizo-Gonzalez knew the house was vacant. He was just approaching the door and knocking on the door. And that's what he told Detective... That's what he and the other individual told Detective Broomer when they contacted him, we're just knocking on the door. And Detective Broomer testified in his deposition that it is not trespass to approach a residence and knock on the door or ring the doorbell even at night. Detective Broomer was aware of this implied license that both the United States Supreme Court and the Circuit have recognized. But don't you have a problem with the clearly established prong? Because the cases that the District Court relied on, you cited, they do all involve public property where someone's in proximity, not even in that, in a facility itself or a building itself, they're walking along the sidewalk or they're nearby it and they have some other... Right. And Judge, I do think we satisfy the second prong of the clearly established analysis. This case isn't like any of those cases. Can you point to any case like this case? I think Jones v. Manriquez is awfully close. And then in the fourth... It's unpublished, isn't it? It is correct. That is correct. It is unpublished, Your Honor. But it is applying clearly established principles of law to a factual circumstance, plainly, obviously unconstitutional.  Jones v. Manriquez, we found it constitutional. Yes, that's right. Based on the particularized facts. So how does that support you here? Well, I think it highlights the difference in this case. Those are facts that we have found are enough on private property. Correct. And the critical distinction in that case though is that there were particularized facts. This court said that the parking garage's history of trespass and Mr. Jones's present there, standing alone would not be enough. This court said that. But the officers went on to determine he was parked in a reserved spot for a business that was closed. And the officers ran his license plate, Mr. Jones's license plate, and determined that his car was not registered to a property in the area. Armed with those particularized facts to Mr. Jones, this court did find reasonable suspicion. But in this case, there are simply no particularized facts to Mr. Trevizo Gonzalez. Is it your position that we're construing the constitutional violation at a fairly high level of generality here, such that for the second prong, the ordinary, well-settled principles would apply in terms of officers need reasonable suspicion to stop people? Well, I think in this circuit- Or to seize them, to seize them. This court has taken these principles, these high-level principles of officers need reasonable suspicion to make a Terry stop. The suspicion needs to be particularized to the individual detained. And that mere presence in an area simply associated with criminal activity is never enough. This circuit has applied those principles in a number of factual circumstances. This court talked about United States v. Davis when my colleague was arguing to the court. And in that case, this court is saying that a known gangster can't be stopped for suspicion of possession of a gun just because he happens to be in a location where shootings occur. In Romero v. Story, this court is saying that an individual can't be stopped on suspicion of vandalism simply because he is in a parking garage at the time a vandalism occurred. And United States v. Dell, admittedly unpublished, but another case with some very important facts saying that an individual can't be stopped on suspicion of breaking into a car just because he's looking in a car window in a part of town where car break-ins are known to occur. And so these cases, I think, quite clearly apply these principles of law in factual circumstances that one, present with more contextual information about the area that the stop occurred in than in this case. Because in all of those cases, the location was known to have criminal activity at the time. In this case, nothing about this property was known other than there was a call six days before the stop where a concerned citizen suspected some goings on there and suspecting some people coming and going. And when Detective Brunimer went to investigate it that night, there was nothing corroborated. Is that really a temp, is the time really a problem? I mean, six days isn't, you know, six weeks. And how should we be thinking about that for purposes of the totality analysis here? It's certainly important in the totality analysis. I don't think it's determinative, but there is a time difference between there coupled with no identification of the individuals who were observed, no corroboration by Detective Brunimer of what was observed at the suspected vacant residence. And then six days later, observing someone who is doing something that any member of the public would have an implied license to do and not doing anything else. I mean, Detective Brunimer didn't see, Detective Brunimer wasn't called there. He was on routine patrol. There wasn't a report of suspicious activity. There wasn't a report of an unwanted person. There wasn't a report of any bothersome activity. He, in a moment, he saw Mr. Trevizo Gonzalez there. He didn't even know whether Mr. Trevizo Gonzalez was loitering or lingering. He didn't see him tampering with the door handle, peering in the windows. I mean, nothing. He was not doing, there was no information available to Detective Brunimer that in any way, shape or form would indicate that Mr. Trevizo Gonzalez was exceeding the scope of the implied license that Detective Brunimer knew about and said that it is not trespassed to do to go up to a door, knock on the door, and see if anyone is home. But the information Detective Brunimer knew about the property is absolutely important. And it's not something that was overlooked by the trial court in any way, shape, or form. And Detective Brunimer argues that the trial court substituted its judgment for the officer and disregarded certain facts. But nowhere in his briefing does Detective Brunimer identify a fact that the court disregarded. What Detective Brunimer's complaint is about the trial court's analysis is that the trial court reached a different conclusion than he did. The court determined on those facts there was not reasonable suspicion where Detective Brunimer determined that he suspected Mr. Trevizo Gonzalez was trespassing. That's a legal conclusion. Neither this court nor the trial court needed to defer to Detective Brunimer's conclusion on that point. It is the court's job to look behind the hood, look at what are the facts that the officer is relying on to make this decision, and would an objective officer, would a reasonable officer, reach that conclusion? So what's the way that you would urge us to dispose of that argument in that the district court used this blatantly contradicted language, which doesn't seem to be apt according to your view. If I understand your view, it's that, well, you're not gonna defer to a legal conclusion. Yeah, yes, Judge. And I think that's really what the court did. The trial court used the blatantly contradicted standard in that footnote, but that's really not what the court was doing. It was just, it was rhetorical. It wasn't legal. I just think the fact that the court used that phrase was just the term that the court used to do. I don't think there was any error in any way, shape, or form associated with that. I think what the court is trying to articulate when it said that was, I've looked at the body cam. I've read the deposition testimony. I don't see how Detective Brunimer can't articulate facts that would lead to a reasonable conclusion that Mr. Treviso-Gonzalez was trespassing. And so I find- Is the district court, are officers entitled to any deference when it comes to their views of what crime might be, if what? Officers are entitled to some, the court shouldn't judge the officer's conduct with 20-20 hindsight. Or, you know, so yes, officers do get some deference in their factual determinations, but what Detective Brunimer's complaint is about the trial court's analysis is not with a factual conclusion. The only fact Detective Brunimer points to is, I received this call on the 29th. I thought that people were trespassing there. I suspected people were trespassing there. And six days later, I saw Mr. Treviso-Gonzalez and I stopped him. I mean, those are the only facts he points to. He doesn't point to any other facts in any of this briefing. And so that's not something that's entitled to deference, and he hasn't put forth anything else that would be entitled to some deference from either this court or from the trial court. And I just, the final point that I wanna make is that the qualified immunity analysis does not require an identical case. Even the Supreme Court in Westby, the cases that say that, you know, in the Fourth Amendment context, we need to get a little bit closer. Even in that case, an identical case is not required. All that is required is that an officer acting under similar circumstances, be found to have violated the constitutional right. And we have that in this case, under the cases that I have cited to the court today and in our briefing. And I think that, you know, the contours of the right to be free from an unreasonable seizure, lacking particularized suspicion, is clearly established. And it has been applied in these cases that are very, quite close in material respects. And it illustrates, I think this case does illustrate why the qualified immunity analysis shouldn't be a scavenger hunt for a case with identical facts. Because in cases where there were more contextual information known to the officers, and by that I mean the area was more full of criminal activity than it was known to be in this case. And where the individuals were doing things that might be looked at as suspicious, diverting their eyes. Let me ask you one question on that, circling back to the private-public distinction. So your logic would then compel us, I think, to conclude that the private-public distinction is not one of those material facts that should deter us from relying on, or endorsing the district court's reliance on, cases about public stops and seizures on public right-of-ways. Is that a fair understanding of your position? That is on the facts of this case. It may be, you know, if Mr. Trevizo Gonzalez was standing by the back fence to the house, maybe the analysis would be different. If he was lingering by the garage, maybe the analysis would be different. If he was sitting down in the front yard, maybe the analysis would be different. But here he's observed in a moment doing what anyone has the ability to do. Girl scouts, solicitors, you know, any person has the ability to approach a house. And here there are simply no facts to suggest he was doing anything other than that. And so I see that I'm out of time. I ask the court affirm the order of the trial court in this case. Thank you. Thank you. Rebettal? Thank you. It's 10 at night. The house is dark. What we are talking about here is whether an officer patrolling that neighborhood can view that as potentially suspicious enough to make the determination that he's going to stop and ask questions. Now, asking questions was not the seizure. That was just an informal contact with these suspects. But when he asks for identification and goes to run those and steps back out of his car before he can do anything else, the appellee is fleeing on his bicycle. And at that point, the officer determines that there is enough to stop him and seize him at that point. The court made it clear, though, that the case turns on whether there was reasonable suspicion to make that initial contact. Well, isn't the seizure when he was the officer told Mr. Gonzalez, don't move? Yes, yes. So what happened with the flight does not inform our understanding of the reasonable suspicion analysis at issue here. Is that right? That's correct. That is not part of the... The flight was not part of what was addressed on appeal or in the court's final judgment. But what we're talking about here is simply, again, the reasonableness of a law enforcement officer when he sees these circumstances, whether it's reasonable for him to stop and ask some questions of the individual. If he'd been wearing delivery garb, maybe it's different. If the house had been lit up or if the yard was not covered in trash, but these are all the circumstances that the officer saw at the time and made his reasonable determination. Now, in order to prevail, appellee would need to meet both prongs of qualified immunity, a violation and a clearly established. Now, in this case, we have not seen, no one has presented to us a case that says, from this circuit or the Supreme Court, that witnessing an individual on private property in circumstances that raise the officer's suspicion that the officer cannot initiate a contact under Terry. That is perfect timing. My time is up. Thank you for your time. Thank you, counsel. We appreciate your arguments. The case will be submitted and the counsel are excused. Thank you.